IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TAKAHARU MIZUTANI                  :        CIVIL ACTION
                                   :
            v.                     :
                                   :
THE HAPPY HUCKSTER, CORP.          :
d/b/a FARMART, et al.              :        NO. 11-4502

MEMORANDUM

Bartle, J.                                        February 1, 2012

        The plaintiff Takaharu Mizutani filed this action
against the defendants The Happy Huckster Corp. d/b/a Farmart
("Farmart") and Stephen Klinghoffer ("Klinghoffer"), an officer
of Farmart, for violations of:  (1) the Fair Labor Standards Act,
29 U.S.C. §§ 201 et seq.; (2) the Pennsylvania Minimum Wage Act,
43 Pa. Cons. Stat. Ann. §§ 333.101 et seq.; and (3) the
Pennsylvania Wage Payment and Collection Law, 43 Pa. Cons. Stat.
Ann. §§ 260.1 et seq.  Plaintiff alleges that he worked in the
Farmart warehouse where he did a variety of jobs.  His
assignments included manual labor and clerical work as well as
maintenance of trucks and calling on customers concerning overdue
invoices.  According to plaintiff, defendant Klinghoffer fired
him on or about December 30, 2010 for complaining about the
failure to pay him overtime.

Defendants have filed a "motion to dismiss and for summary judgment by way of Rule 12(d)"[1] on the ground that the claims in issue were previously settled prior to the institution of this lawsuit.  Plaintiff counters with several arguments.  He first asserts that Kenneth Spiegel, Esquire, the attorney then representing him, did not have authority to enter into a settlement on his behalf.  To resolve the question whether a settlement occurred, the parties agreed that the court should hold an evidentiary hearing at which Spiegel would be called to testify and in the interest of judicial economy should then decide any disputed issues of fact at this early stage in the litigation.[2]

The evidence at the hearing revealed the following.  The negotiations between Spiegel on behalf of the plaintiff and Farmart's attorney concerning a possible settlement began in January, 2011.  Plaintiff had engaged Spiegel as his lawyer after defendant Klinghoffer had faxed to plaintiff a form of release which was entitled a "Severance Agreement."  It provided not only

---

1.  Rule 12(d) of the Federal Rules of Civil Procedure states:

> If, on a motion under Rule 12(b)(6) or 12(c),
> matters outside the pleadings are presented
> to and not excluded by the court, the motion
> must be treated as one for summary judgment
> under Rule 56.  All parties must be given a
> reasonable opportunity to present all the
> material that is pertinent to the motion.

2.  Based on this agreement, the motion before the court cannot properly be considered a motion for summary judgment under Rule 56 since the court will be deciding genuine issues of material fact.

that Farmart but also all its agents and employees would be
released "to the extent permissible under applicable law" with
respect to all federal, state and local statutory and common-law
tort and contract claims, "including without limitation any claim
for wrongful termination or discrimination."  In exchange,
plaintiff would receive two weeks' vacation pay.

      For the next several months, negotiations continued
over the amount to be paid to plaintiff.  While Spiegel had sent
Farmart's attorney a form of release, Farmart's counsel
throughout insisted that the "full release" previously presented
to plaintiff would have to be executed in return for any payment.

      On April 30, 2011, Farmart's attorney emailed Spiegel
as follows:

> My client accepts your offer to resolve this
> "once and for all" by paying your client
> $7,000.00 for the full release previously
> sent to you.
>
> My client will send you the check for
> $7,000.00 upon receipt of the signed Release.

      The release "previously sent" by Klinghoffer to
plaintiff in January, 2011 contained the following critical
language giving plaintiff twenty-one days, until February 3,
2011, to sign the release and seven days after execution to
revoke or repudiate it:

> In addition to the foregoing to which you are
> entitled, Employer will, contingent upon
> Employee agreeing to each and every provision
> of this Agreement and returning two signed
> originals of it to Employer within twenty one
> calendar days of the receipt of this
> Agreement by Employee (that is, on or before

-3-

> February 3, 2011), the following additional
> compensation, to be paid by Employer, unless
> Employee revokes or repudiates this Agreement
> during the first seven days following the
> date of Employee's execution of....

The release in the hands of Spiegel did not set forth the $7,000 settlement amount but instead stated that plaintiff would receive "Two Weeks Vacation Pay that [plaintiff] Acknowledges He Would Not Otherwise Be Entitled to Receive."

Spiegel had read the proposed Farmart release in his possession and discussed its salient provisions with the plaintiff who agreed to settle for the payment to him of $7,000 in return for executing the release.  Spiegel then conveyed to Farmart's attorney that plaintiff had agreed to the terms of the settlement.  It was clearly contemplated by both sides that the release would be amended to insert the $7,000 to be paid to plaintiff.  In addition the February 3, 2011 signing deadline recited in the release had long passed.  The court can reasonably infer that the parties intended to substitute a new twenty-one day signing period, which would begin to run after the receipt by plaintiff or Spiegel of a revised release.

Presumably, the attorney for Farmart had the responsibility for preparing a revised release containing the settlement amount as well as a new twenty-one day period during which plaintiff was to execute the release.  There is no indiction on the record that a revised release was ever forwarded to Spiegel.

-4-

As it turned out, Spiegel, a sole practitioner, became ill at about this time and retired from the practice of law. Plaintiff never signed any release and was never paid any money. Thereafter, plaintiff obtained a new lawyer who filed this lawsuit.

Plaintiff, as noted above, contends that Spiegel did not have authority to enter into the settlement on his behalf. It is well settled that an attorney does not have authority to settle a client's lawsuit or claim merely because he or she represents the client.  E.g., Rothman v. Fillette, 469 A.2d 543, 545 (Pa. 1983).  Instead, "an attorney can only bind his client to a settlement based on express authority." Reutzel v. Douglas, 870 A.2d 787, 792 (Pa. 2005).  In this case, Spiegel discussed the $7,000 settlement offer and reviewed the material terms of the release with plaintiff.  After plaintiff accepted the offer, Spiegel then conveyed the acceptance to the attorney for Farmart. Spiegel had express authority to do so.  We must now determine if an enforceable settlement existed as a result.

Defendants rely heavily on Forte Sports, Inc. v. Toy Airplane Gliders of America, Inc., 371 F. Supp. 2d 648 (E.D. Pa. 2004).  In Forte, the parties agreed in an email exchange to the essential terms of settlement which would be later memorialized in a formal contract.  Id. at 649.  After attempts to draft a written settlement agreement failed, the plaintiff brought a motion to enforce settlement.  Id.  This court granted the motion to enforce, stating that:

-5-

> It is well established that a contract
> comes into being once the parties have
> reached a meeting of the minds on the
> essential terms and have manifested the
> intent to be bound by those terms....
> ....
> .... While a signed settlement agreement
> or release is certainly customary when
> resolving legal disputes, the failure to
> execute such a document here does not negate
> the existence of a legally binding
> settlement.  The settlement agreement cannot
> be reasonably interpreted to mean that a
> signed writing incorporating its terms was a
> condition precedent.

Id. at 649-50.

Forte and the other cases cited by defendants are distinguishable.  Here, Farmart's attorney insisted that the release already drafted be executed and stated that the check for $7,000 would be sent "upon receipt of the signed Release."  More significantly, the execution of the release was of critical importance to the very existence of the settlement because it contained not only a clause providing a deadline for the plaintiff to sign it but also an additional period following execution for him to revoke or repudiate it.  The signing or non-signing of the release by plaintiff was not simply a formality or ministerial act.  Instead, signing was a condition precedent and the settlement even then was subject by agreement to later revocation or repudiation.

In sum, Farmart's attorney never sent a revised release for plaintiff to execute.  Thus, the fault lies with Farmart.  In any event, even if Spiegel had had the responsibility to revise the release and present it to plaintiff and the twenty-one day

-6-

signing period is deemed to have started anew on April 30, 2010, the fact remains that plaintiff never affixed his signature to the release.  The failure to sign within the twenty-one days is in effect a timely revocation or repudiation of the settlement, which the proposed release specifically permitted during a seven day period after its execution.  It would be an empty formality to require the plaintiff here first to sign the release before being able to revoke or repudiate it.  See McNamara v. Tourneau, 464 F. Supp. 2d 232, 240-41 (S.D.N.Y. 2006).

There could be no enforceable settlement until plaintiff signed the release during the time period provided in the release and until the opt-out period following timely execution had expired without a revocation or repudiation. Neither event happened here.

Accordingly, the motion of the defendants "to dismiss or for summary judgment" will be denied.[3]

_____

3.  Plaintiff also asserts that claims under the Fair Labor Standards Act cannot be settled without prior court approval. Because we are denying the motion on other grounds, we need not address this issue.